Kenneth R. Puhala
Theodore L. Hecht
SCHNADER HARRISON SEGAL & LEWIS LLP
140 Broadway, Suite 3100
New York, NY 10005-1101
Phone: (212) 973-8000
Fax: (212) 972-8798
kpuhala@schnader.com
thecht@schnader.com
*Attorneys for Sandy Indrawan, as Foreign Representative*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                               :
In re:                                                         : Chapter 15
                                                               :
EMPIRE CAPITAL RESOURCES PTE. LTD.,                            : Case No.
                                                               :
            Debtor in a Foreign Proceeding.                    :
                                                               :
---------------------------------------------------------------X

**DECLARATION OF SANDY INDRAWAN IN SUPPORT OF
VERIFIED PETITION OF FOREIGN REPRESENTATIVE FOR (i) RECOGNITION
OF FOREIGN MAIN PROCEEDING PURSUANT TO 11 U.S.C. §§ 1515 AND
1517 AND (ii) RELIEF PURSUANT TO 11 U.S.C. §§ 1520 AND 1521**

Sandy Indrawan, of full age, hereby declares:

1. I am the duly authorized foreign representative of Empire Capital Resources Pte. Ltd. (the "Foreign Debtor") in the above-captioned Chapter 15 case.

*A.  Background*

2. The Foreign Debtor was incorporated under the laws of the Republic of Singapore and has registered offices located at 39 Robinson Road, #20-01, Robinson Point, Singapore 068911.

PHDATA 6389245_2

3. The Foreign Debtor is a wholly-owned subsidiary of PT Berau Coal ("Berau Coal"). PT Berau Coal Energy Tbk ("BCE"), a public company incorporated under the laws of the Republic of Indonesia, is an indirect 90% shareholder of Berau Coal.

4. BCE has an interest, either directly or otherwise, in a total of approximately 18 entities incorporated in various jurisdictions (the "Berau Group").

5. The Berau Group is in the business of the mining and export of thermal coal and is one of the largest coal producers in Indonesia in terms of production volume.

6. Berau Capital Resources Pte. Ltd. ("BCR") was incorporated under the laws of the Republic of Singapore by BCE for the sole purpose of raising funds for and on behalf of BCE through the issuance of notes.

### B. The Existing Notes

7. BCR issued $450 million in 12.5% Guaranteed Senior Secured Notes due July 8, 2015 (the "2015 Notes") pursuant to the terms of an Indenture dated July 8, 2010, as amended and/or supplemented from time to time (the "2015 Notes Indenture"). BCE and certain of its direct or indirect subsidiaries, including the Foreign Debtor (the "Subsidiary Guarantors")[1] are guarantors of the 2015 Notes. A copy of the 2015 Notes Indenture is attached hereto as **Exhibit A**.

8. BCE separately issued $500 million in 7.25% Guaranteed Senior Secured Notes due March 13, 2017 (the "2017 Notes," together with the 2015 Notes, the "Existing Notes") pursuant to the terms of an Indenture dated March 13, 2012, as amended and/or supplemented

---

[1] The Subsidiary Guarantors are the Foreign Debtor, PT Armadian Tritunggal, PT Berau Coal, Winchester Investment Holdings PLC, Aries Investments Limited, Seacoast Offshore Inc. and Maple Holdings Limited.

from time to time (the "2017 Notes Indenture," together with the 2015 Notes Indenture, the "Indentures"). A copy of the 2017 Notes Indenture is attached hereto as **Exhibit B**.

9.   The financial and operational health of the Berau Group has deteriorated drastically since 2015. This is, in part, directly attributable to the decrease in global coal prices in recent years. In particular, the price of thermal coal has dropped from $141 per metric ton in early 2011 to approximately $50.68 per metric ton as of April 2016. The Berau Group's business has been further hampered by the operational challenges faced in producing high quality coal.

10.   As a result of the deterioration of the Berau Group's financial and operational condition, BCR, BCE and the Subsidiary Guarantors were unable to meet their financial obligations under the 2015 Notes. BCR, BCE and the Subsidiary Guarantors could not make the principal repayment of $450 million due on July 8, 2015, under the 2015 Notes, which also resulted in the default and acceleration of BCE's and the Subsidiary Guarantors' obligations under the 2017 Notes.

11.   In addition, in July 2015, the Berau Group underwent a change of shareholder when Asia Coal Energy Ventures Limited completed a general offer for all the issued and paid up share capital for Asia Resource Minerals PLC (the previous ultimate shareholder of the Berau Group), which was, at that time listed on the London Stock Exchange. Following the completion of the general offer, in addition to the financial difficulties that were faced by the Berau Group, there were also difficulties in obtaining business and operational control over the Berau Group in Jakarta and Kalimantan. Notwithstanding, the Berau Group, under the stewardship of its new shareholder, made good faith efforts to restructure the group's obligations under the Existing Notes.

### C. *The Berau Group's Prior Restructuring Efforts*

12. The Berau Group has made substantial efforts to restructure its obligations under the Existing Notes since 2015.

13. While seeking to effectuate a proposed scheme of arrangement to restructure the Existing Notes, on July 4, 2015, BCR filed proceedings in the High Court of the Republic of Singapore (the "Singapore Court") pursuant to Section 210(10) of the Singapore Companies Act (Cap. 50) ("Section 210(10)"), for an order imposing a moratorium on collection activity against BCR, BCE and the Subsidiary Guarantors (the "BCR's Section 210(10) Proceeding").

14. On July 7, 2015, the Singapore Court entered orders prohibiting for a period of six months the commencement or continuation of any action by any creditors against BCR, BCE and the Subsidiary Guarantors.

15. On or about July 10, 2015, BCR filed a Chapter 15 petition in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Case No. 15-11804(MG) (the "BCR Chapter 15 Case").

16. On August 6, 2015, the Bankruptcy Court entered an Order Granting Provisional Relief in the BCR Chapter 15 Case, including a stay on all enforcement actions against BCR, BCE and the Subsidiary Guarantors. [Docket No. 20].

17. On October 16, 2015, the Bankruptcy Court entered an order in the BCR Chapter 15 Case granting the application of BCR's foreign representative for recognition of the Section 210(10) Proceeding as a foreign main proceeding which included an injunction against the commencement or continuation of actions or proceedings against BCR, BCE and the Subsidiary Guarantors. [Docket No. 32].

18.     Since the ad hoc committee constituting certain holders of the Existing Notes would not consent to a further extension of the moratorium, on March 3, 2016, the Singapore Court entered an order dismissing BCR's application for an extension of the moratorium granted in BCR's Section 210(10) Proceeding.

19.     As a result, BCR filed a motion to dismiss the BCR Chapter 15 case, which was granted. [Docket Nos. 38, 40].

20.     On June 1, 2016, BCR submitted an application for a judicial management order in the Singapore Court pursuant to Part VIIIA of the Singapore Companies Act (Cap. 50) and BCE applied for a moratorium under Section 210(10). These applications were withdrawn on November 2, 2016 as BCE and BCR sought to propose inter-conditional schemes of arrangement to implement a holistic restructuring of the Existing Notes.

21.     On November 11, 2016, BCR and BCE filed applications in the Singapore Court under Section 210 of the Singapore Companies Act (Cap. 50) ("Section 210") seeking leave to convene creditors' meetings to seek approval of inter-conditional schemes of arrangement to restructure the Existing Notes, which were withdrawn on or about April 9, 2017 following objections of and actions taken by the Minority Objectors (as defined below).

D.     *The Foreign Debtor's Singapore Proceeding*

22.     On April 9, 2017, the Foreign Debtor filed an application (the "Singapore Application") in the Singapore Court under Section 210 (the "Singapore Proceeding") seeking leave to convene a creditors' meeting to seek approval of a new proposed scheme of arrangement which seeks to restructure the Existing Notes (the "Scheme"). The Originating Summons in the Singapore Proceeding, to which the proposed Scheme is appended, is attached as **Exhibit C**.

23. In the Singapore Proceeding, the Foreign Debtor also sought the imposition of a moratorium on any collection efforts against the Foreign Debtor, BCE, BCR and the Subsidiary Guarantors (the "Moratorium").

24. Under the proposed Scheme, the holders of the Existing Notes (the "Noteholders") will receive new senior notes issued by Berau Coal, the main operating company within the Berau Group, which will be guaranteed by BCE (the "New Notes"). The New Notes will accrue interest at the rate of LIBOR plus one percent (1%), which will be payable at the end of every six months. The New Notes will have a term of 10 years.

25. The Scheme will afford Noteholders a far greater recovery than they would receive in a liquidation. Deloitte & Touche Corporate Finance Pte. Ltd. ("Deloitte"), the Foreign Debtor's financial advisor, estimates that the weighted average recovery to Noteholders in a liquidation would be between 7.5% and 8.3%. Deloitte estimates that under the terms of the Scheme, the Noteholders' recovery would be approximately 36.9%.

26. The proposed Scheme contains terms which are more beneficial to the Noteholders than previous proposed restructuring plans, due to feedback from Noteholders and enabled by a recent short-term improvement in coal prices. The estimated recovery based upon the terms of the Scheme has increased by approximately 71% over the restructuring plan proposed in November 2016, under which the recovery to Noteholders would have been between 21.6% and 22.9%.

27. If the Scheme is approved in the Singapore Proceeding, all of the obligations of the Foreign Debtor, BCE, BCR and the Subsidiary Guarantors under the Existing Notes will be extinguished as a matter of Singapore law.

28. Under the proposed Scheme, the issuance of the New Notes is contingent upon the entry of an order of the U.S. Bankruptcy Court enforcing the Scheme within the territorial jurisdiction of the United States in a Chapter 15 case.

29. The arrangement and compromise implemented under the Scheme will enable the Berau Group to continue to carry on business as a going concern and avoid the liquidation of the Foreign Debtor, BCE, BCR and the Subsidiary Guarantors.

30. The Foreign Debtor's Singapore Application was opposed by Pathfinder Strategic Credit LP ("Pathfinder") and BC Investment LLC ("BC Investment"), which purport to be limited liability companies organized under the laws of the Cayman Islands of undisclosed residence, who contend that they together are the holders of 25.28% of the 2015 Notes and 4.9% of the 2017 Notes (the "Minority Objectors").

31. On February 19, 2018, the Singapore Court entered a Judgment permitting the creditors' meeting to be convened and granting a moratorium on collection efforts against the Foreign Debtor, BCE, BCR and the Subsidiary Guarantors within Singapore up to a date after the meeting is convened or other order of the court (the "Singapore Judgment"). A copy of the Singapore Judgment is attached at **Exhibit D**.

E.  *The New York Litigation*

32. In an effort to thwart the Berau Group's good faith restructuring efforts, on March 10, 2017, Pathfinder filed a lawsuit in the Supreme Court of New York (the "NY Court") against the Foreign Debtor, BCE and the Subsidiary Guarantors[2] to enforce the 2017 Notes, captioned *Pathfinder Strategic Credit, LP v. PT Berau Coal Energy Tbk, et al.*, Index No. 651303/2017 (the "First NY Action").

---

[2] The defendants in both actions shall be collectively referred to herein as the "Defendants."

33. On March 10, 2017, the Minority Objectors filed a second lawsuit in the New York Court against the Foreign Debtor, BCE, BCR and the Subsidiary Guarantors to enforce the 2015 Notes, captioned *Pathfinder Strategic Credit LP and BC Investment LLC v. Berau Capital Resources Pte. Ltd., et al.*, Index No. 651304/2017 (the "Second NY Action," and together with the First NY Action, the "NY Actions").

34. On May 17, 2017, the respective plaintiffs in the NY Actions filed amended complaints containing substantially the same allegations raised in the original complaints. On June 23, 2017, Defendants filed motions to strike irrelevant and prejudicial matters from the amended complaints (the "Motions to Strike"). On August 24, 2017, the NY Court granted the Motions to Strike and, thereafter, the plaintiffs filed second amended complaints removing the irrelevant matters.

35. On January 4, 2018, the respective plaintiffs filed motions for summary judgment in each of the NY Actions, to which the Defendants filed oppositions on February 9, 2018. On February 23, 2018, the plaintiffs filed replies in further support of their motions for summary judgment. The motions for summary judgment remain pending before the NY Court.

### F. *The Foreign Debtor Meets the Requirements for Chapter 15 Recognition*

36. The Singapore Proceeding should be recognized as a foreign main proceeding because all of the requirements of the Bankruptcy Code are satisfied.

37. I have been appointed as the foreign representative of the Foreign Debtor in connection with this Chapter 15 case by the board of directors of the Foreign Debtor. A true and correct copy of the corporate resolution appointing me as foreign representative is attached as **Exhibit E**.

38. As a result, I am a person authorized to administer the reorganization of the Foreign Debtor's affairs and represent the Foreign Debtor in this Chapter 15 case. Therefore, I am a **"foreign representative"** within the meaning of Section 101(24) of the Bankruptcy Code.

39. The Singapore Proceeding is a judicial proceeding, including an interim proceeding, under Singapore law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation. Accordingly, the Singapore proceeding is a **"foreign proceeding"** within the meaning of Section 101(23) of the Bankruptcy Code.

40. The Foreign Debtor is incorporated under Singapore law and has its registered offices in Singapore. As a result, the Foreign Debtor has its **"center of main interest"** in Singapore and, therefore, the Singapore Proceeding should be recognized as a **"foreign main proceeding"** pursuant to Section 1502(4) of the Bankruptcy Code.

41. The Singapore proceeding is the only pending debt adjustment or insolvency proceeding of any kind involving the Foreign Debtor.

42. Furthermore, jurisdiction and venue are appropriate because under the Indentures, the Foreign Debtor consented to jurisdiction in New York in connection with any suit, action or proceeding arising out of or relating to the Existing Notes. The Indentures also provide that the Existing Notes will be governed by, and interpreted in accordance with, New York law.

G. *The Automatic Stay Should Be Extended to BCE, BCR and the Subsidiary Guarantors*

43. Since the release of the Foreign Debtor's obligations under the Existing Notes is wholly dependent upon the restructuring of the indebtedness of all of the members of the Berau Group under the Existing Notes, the Moratorium granted by the Singapore Court extends to actions against BCE, BCR and the Subsidiary Guarantors.

44. The Foreign Debtor is similarly requesting the entry of an order extending to BCE, BCR and the Subsidiary Guarantors the automatic stay of enforcement efforts against the Foreign Debtor which will be imposed under Section 1520(a)(1) if recognition is granted. This is the same relief that this Court previously granted in the BCR Chapter 15 Proceeding. Without such protection, the Foreign Debtor's efforts to achieve a successful restructuring that will be beneficial to the Noteholders will be jeopardized.

45. The efficient and successful administration of the Foreign Debtor's estate requires that the rights of all of the Noteholders, wherever situated, be resolved in the Singapore Proceeding. If the relief sought herein is not granted, the Minority Objectors will be able to continue to prosecute the NY Actions against BCE, BCR and the Subsidiary Guarantors in derogation of the purpose of the Moratorium ordered by the Singapore Court and the rights of the other Noteholders, destroying value for all stakeholders of the Berau Group.

46. The NY Actions are impeding the Foreign Debtor's ability to restructure the Existing Notes by draining the resources of the Berau Group and diverting the attention of its management. A complete stay of the NY Actions is essential to maintain the status quo pending the completion of the Singapore Proceeding and this Court's determination as to whether comity should be extended to the Scheme, if it is approved by the Singapore Court.

47. Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America, that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Executed on March 19, 2018,
in the Republic of Indonesia

_____
Sandy Indrawan